UNITED STATES DISTRICT COURT
DISTRICT OF VERMONT

CINCINNATI INSURANCE COMPANIES, :
:
    Plaintiff, :
:
v. : File No. 1:09-CV-96
:
HECTIC ELECTRIC, INC., :
:
    Defendant. :
:

MEMORANDUM AND ORDER
(Paper 22)

I.    Introduction

Defendant Hectic Electric, Inc. (Hectic Electric or Hectic) has filed a motion in limine (Paper 22) to exclude the expert testimony of Plaintiff's electrical expert Nathaniel Johnson. Plaintiff Cincinnati Insurance Companies (Cincinnati Insurance), as subrogee of its insureds Garrett and Ellen Kouwenhoven, opposes the motion. (Paper 30.) For the reasons set forth below, the motion is DENIED.

II.    Discussion

    A.    Expert Testimony under Daubert and the Federal Rules of Evidence

The decision to admit or exclude expert testimony lies in the Court's discretion and will not be deemed an abuse of discretion unless it is manifestly erroneous. Lippe v. Bairnco Corp., 99 F. App'x 274, 278 (2d Cir. 2004). The admissibility of testimony is governed by the principles of Federal Rule of Evidence 104(a). Under that Rule, a party proffering expert testimony has the burden of establishing admissibility by a

1

preponderance of proof.  See Bourjaily v. United States, 483 U.S. 171 (1987).  Under Federal Rule of Evidence 702, the Court has discretionary authority to determine reliability in light of the particular facts and circumstances of the particular case.  Kumho Tire Co. v. Carmichael, 526 U.S. 137, 158 (1999).  If the Court finds that the evidence is admissible, the opposing party may still contest the weight of the evidence within the adversarial system.  Amorgianos v. Nat'l R.R. Passenger Corp., 303 F.3d 256, 267 (2d Cir. 2002).  "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."  Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 596 (1993).

> Rule 702 provides:
>
> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliability to the facts of the case.

Fed. R. Evid. 702.

Rule 702's requirement that the evidence assist the trier of fact to understand the evidence or determine a fact in issue is essentially a requirement that the evidence be relevant.  Daubert, 509 U.S. at 591.  In the context of scientific evidence, the issue of relevance also has been called "fit."  Id.  The fit of the facts and methodology to the conclusion does not have to be exact.  "A minor flaw in an expert's reasoning or a slight

2

modification of an otherwise reliable method will not render an expert's opinion per se inadmissible. The judge should only exclude the evidence if the flaw is large enough that the expert lacks 'good grounds' for his or her conclusions." Amorgianos, 303 F.3d at 267 (internal quotation marks and citation omitted).

Rule 702 also requires the expert testimony be the product of "reliable principles and methods." The Daubert Court set forth five factors for a court to consider in making this determination: (1) whether the theory or technique can be or has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error; (4) whether the technique's operation is subject to standards governing its application; and (5) the general acceptance within the relevant scientific community. 509 U.S. at 593-94. This list is not exclusive, no single factor is dispositive, and the application of factors depends on the particular circumstances of the particular case. Kumho Tire, 526 U.S. at 150.

Finally, the testimony must be based on sufficient facts or data. The term "data" encompasses the reliable opinions of other experts and "facts or data" is broad language allowing an expert to rely on hypothetical facts supported by the evidence. Fed. R. Evid. 702 advisory committee's note. The Court's inquiry must focus on the methodology used by the expert, and not the conclusions reached. Daubert, 509 U.S. at 595. The Court, however, is not obligated to accept a conclusion that does not reliably flow from the facts available and methodologies used. Amorgianos, 303 F.3d at 266 (citation omitted).

B.  Application of the Standard

The facts of this case are discussed as they apply to the challenge of the expert testimony.  Cincinnati Insurance alleges a junction box installed by Hectic Electric to power an outdoor hot tub at the Kouwenhoven home failed several years after installation, igniting flammables in the basement and causing the May 25, 2006 fire.

Cincinnati Insurance has disclosed Nathaniel Johnson as an electrical expert. Johnson is a licensed professional engineer and has extensive experience in the area of forensic electrical investigations.  See Paper 28-9 (Johnson Curriculum Vitae).  He worked as an engineer in the private sector for over thirty years before becoming the Fire Prevention Officer for the City of Laconia, New Hampshire, a position in which he investigated fires under National Fire Protection Association (NFPA) Codes for almost ten years.  Id. at 2-3.  Currently, Johnson is owner of Winnipesaukee Associates and, over the past thirty years has worked as a private consultant performing, inter alia, forensic electrical engineering evaluation, including fire origin and cause investigation. Id. at 1.

Johnson prepared an expert report dated November 16, 2009.  Hectic Electric argues Johnson's expert opinion testimony should be excluded because:  (1) he employed an unreliable methodology; (2) his opinion is not based on reliable testing or analysis; (3) his conclusions lack fit with the issues; and (4) his testimony as an expert would confuse a jury and prejudice Hectic.  See Paper 22 at 2.  In his report, Johnson makes several conclusions, including:  (1) the origin of the fire was "more probable than

4

not ignited by molten steel ejected from the arcing at the [] junction box cover" and (2) the "cause of the arcing . . . was the direct result of an insulation failure." (Paper 22-3 at 3-4.) Defendant particularly challenges Johnson's reliance on "cold flow" to explain how the plastic insulator covering a connector in the junction box failed, causing the arcing event that led to the fire. Id.; Paper 22 at 2.

Three of Hectic's challenges to the admissibility of Johnson's testimony are easily disposed of. As to its fourth challenge, Hectic may seek a limiting instruction and standing order to prohibit use of the term "expert" before the jury, and if successful, would prevent undue prejudice to Hectic. Its second challenge is also unavailing for the reason tests are not a requirement. See Kumho Tire, 526 U.S. at 156 ("an expert m[ay] draw a conclusion from a set of observations based on extensive and specialized experience."). Hectic's first argument that Johnson's methodology was unreliable is only somewhat more complex. Johnson purportedly followed standards set forth by the National Fire Protection Association in its publication NFPA 921: Guide for Fire and Explosion Investigation. See Papers 22-3 at 1; 28 at 12.[1] NFPA 921 qualifies as a reliable method endorsed by a professional organization. See Daubert, 509 U.S. at 594; see also Hoang v. Funai Corp., 652 F. Supp. 2d 564, 567 (M.D. Pa. 2009) (noting several courts have held the methodology of NFPA 921 reliable for purposes of Rule 702).

---

[1] Cincinnati Insurance provided a copy of a page from the 2001 edition of the Guide section entitled "Basic Methodology," describing the use of the scientific method. In his report, Johnson listed the 2004 edition as the document he reviewed.

Hectic Electric's third challenge to "fit" requires a more thorough discussion. The majority of its argument focuses on Johnson's use of the term "cold flow" to explain the failure of the insulation cover. See id. at 9-18. Hectic argues Johnson, an electrical engineer, is unqualified to opine on an "unproven theory" of polymer physics. (Paper 22 at 13, 16.) As in other relevance inquiries, the standard for analyzing the fit of an expert's analysis to a particular case is not that extreme. His use of an accepted methodology which led him to reach a conclusion based on a theory of "cold flow," after an investigation of data and facts, is not so flawed as to render his opinions inadmissible. See Daubert, 509 U.S. at 595; Amorgianos, 303 F.3d at 267. Johnson's testimony on the origin and cause of the fire is relevant because it will assist the jury in determining facts in issue.

Different investigators could use the same methodology and arrive at contradictory conclusions. An expert is not required to conclusively rule out every possibility. For example, physicians' expert testimony has been admitted despite failure to rule out alternative causes. See Figueroa v. Boston Scientific Corp., 254 F. Supp. 2d 361, 366 (S.D.N.Y. 2003) (explaining where physicians do not rule out all possible causes, the "deficiency" is one of weight of evidence not admissibility). If contradictory conclusions are offered, the issue is one of credibility and weighing of evidence, i.e., matters for resolution by the jury. At this point, Hectic's objections go more to weight than to admissibility. At trial, Cincinnati will be responsible for establishing the necessary foundation for Johnson's opinions.

III.　Conclusion

Defendant Hectic Electric, Inc.'s Motion in Limine to Exclude Expert Opinion Testimony of Plaintiff's Electrical Expert Nathaniel Johnson (Paper 22) is DENIED. In light of the report of the ENE evaluator, a second mediation session should be scheduled with Attorney Samuel Hoar, Jr. See Paper 24. The parties shall inform the Court of the date of the second ENE by April 30, 2010.

SO ORDERED.

Dated at Brattleboro, in the District of Vermont, this 9th day of April, 2010.

/s/ J. Garvan Murtha
Honorable J. Garvan Murtha
Senior United States District Judge